
IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
January 10, 2017 Session

## HENRY EPPS v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Montgomery County**
**No. 41200478          William R. Goodman, III, Judge**

_____

### No. M2016-00626-CCA-R3-PC

_____

Henry Epps ("the Petitioner") entered a best interest plea to six counts of sexual exploitation of a minor; the remaining nine counts of sexual exploitation of a minor were dismissed per the negotiated plea agreement. The Petitioner received an effective sentence of eight years with release eligibility after service of 100% of the sentence in the Department of Correction. The Petitioner filed an original and an amended petition for post-conviction relief. After an evidentiary hearing, the post-conviction court denied relief. On appeal, the Petitioner argues that trial counsel's performance was deficient in failing to subpoena the Petitioner's computer forensic expert to testify at trial and in failing to inform the Petitioner until the Friday before his Monday trial that the expert had not been subpoenaed. Petitioner claims that absent trial counsel's deficient performance, the Petitioner would have proceeded to trial, and therefore the Petitioner's best interest plea was entered involuntarily. After a thorough review of the record and applicable case law, we reverse and remand for a new post-conviction hearing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ROBERT W. WEDEMEYER, J., joined.

B. Nathan Hunt and Zachary L. Talbot, Clarksville, Tennessee, for the appellant, Henry Lee Epps.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Counsel; John W. Carney, District Attorney General; and Daniel Brollier, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## *I. Factual and Procedural Background*

### *Guilty Plea Submission*

The Petitioner was indicted on May 7, 2012, by the Montgomery County Grand Jury for fifteen counts of sexual exploitation of a minor. On August 18, 2014, the Petitioner entered a best interest guilty plea. The State offered the following recitation of facts in support of the guilty plea:

> Mike [Cerasceras] would testify that he conducted a peer-to-peer investigation and found some child porn[ography] from the IP address that went back to the [Petitioner's] home. When they executed a search warrant at that home, they did collect two laptop computers and some external hard drive on the two [l]ap[]top computers and [on] one of the external hard drives we found in excess of six hundred images that constituted child pornography, sexual exploitation of a minor. Those are the bases for the counts in the indictment. Most of those images, at least five hundred were videos in this case and a little different than the cases we have tried in the past and most of those videos, if not all the videos . . . were in the active area on the computer, meaning these are not ones that were covered – these were ones that were still inside folders, peer-to-peer sharing folders[.]

Trial counsel clarified that counts one through five of the indictment were based on "live files existing on the computer[]" and count six was based on 140 to 160 deleted images. The trial court explained to the Petitioner the elements of the offense he was charged with and the sentencing range of that offense. The Petitioner affirmed that he understood the charges against him and the possible sentencing range. The Petitioner affirmed that he understood that by entering a best interest plea, the trial court would enter a judgment of guilty but it would not ask the Petitioner whether he was guilty of the offenses. The trial court informed the Petitioner that he had a right to a jury trial and to plead not guilty, that the State would have to prove the elements of the charged offenses beyond a reasonable doubt, that the Petitioner had the right to confront the State's witnesses and the right to present his own witnesses, that he had the right to remain silent at trial or to testify in his own defense, and that he had the right to appeal if he was convicted by a jury. The Petitioner stated that he understood that he was waiving these rights by entering his best interest plea. The Petitioner affirmed that it was his desire to enter the best interest plea.

The trial court then accepted the Petitioner's best interest plea to six counts of sexual exploitation of a minor and noted that at a later hearing, the trial court would

- 2 -

dismiss the remaining counts from the indictment and enter a formal finding of guilt. On January 7, 2015, the trial court sentenced the Petitioner to an effective sentence of eight years with release eligibility after service of 100% of the sentence in the Department of Correction; the Petitioner was ordered to serve his sentences of eight years for each of the six counts of sexual exploitation of a minor concurrently. The trial court ordered the Petitioner to report to the Montgomery County Jail on March 1, 2015, to begin his sentence so that the Petitioner could be honorably discharged from the U.S. Army.

On July 29, 2015, the Petitioner filed a pro-se petition for post-conviction relief, arguing that his "conviction was based on use of evidence gained pursuant to an unconstitutional search and seizure" and "illegal evidence[.]" Counsel was appointed and on January 29, 2016, an amended petition for post-conviction relief was filed alleging that the Petitioner received ineffective assistance of counsel. The Petitioner also filed a motion requesting that the post-conviction court order "to authorize funds in the amount of Three Thousand Dollars ($3,000.00) to be used to hire the services of Tami L. Loehrs to testify at the hearing scheduled in the above referenced matter on March 14, 2016 or in the alternative to allow Ms. Loehrs to participate by telephone at said hearing."

*Post-Conviction Proceedings*

On March 14, 2016, the Petitioner testified that he entered a best interest plea to six counts of sexual exploitation of a minor, and he was sentenced to an effective sentence of eight years at 100% in the Department of Correction. He stated that trial counsel met with him three or four times throughout the representation. The Petitioner explained that he retained Ms. Loehrs as a computer forensics expert and that he paid her $20,000 for her services. He stated that before his trial date, he believed that Ms. Loehrs was prepared to travel to Tennessee and testify on his behalf at his trial on August 18, 2014. On August 15, the Petitioner "had a meeting with [trial counsel], and after the meeting – [he] was under the impression that [Ms. Loehrs] was going to be there." The Petitioner contacted Ms. Loehrs that afternoon "to see how much money she need[ed] as far as flying back here to testify. [Ms. Loehrs] said [that] she [was] not coming because she wasn't put on the witness list by [trial counsel]." After learning that Ms. Loehrs would not be testifying at his trial, the Petitioner contacted trial counsel. The Petitioner testified that trial counsel told him that he did not have a defense and that he had three options: "take a plea deal;" "flee to Mexico;" or "hire a new attorney." After speaking with trial counsel, the Petitioner wrote a letter to trial counsel terminating his representation and a letter to the trial court, informing it that he had ended trial counsel's representation and requesting a continuance. The Petitioner also spoke with other attorneys about hiring new trial counsel, but he was unable to retain a new attorney.

On Monday, August 18, 2014, the Petitioner attempted to deliver the letter to the trial court, but he was informed by the court officer that the letter would need to be

mailed to the trial court. The Petitioner then gave both letters to trial counsel and trial counsel informed the Petitioner that he would submit the letters to the trial court. After trial counsel had a conference with the trial judge and the assistant district attorney, trial counsel advised the Petitioner that the trial court denied the continuance. The Petitioner stated that trial counsel did not indicate that he was prepared to try the Petitioner's case and instead advised the Petitioner to accept the State's plea offer—that the Petitioner enter a best interest plea to six counts of sexual exploitation of a minor, the remaining counts would be dismissed, and the Petitioner would be sentenced to eight years at 100% on each count to be served concurrently. The Petitioner testified that he felt like he had no other choice but to enter a best interest plea because his expert had not been subpoenaed to testify, his request for a continuance had been denied, and his "attorney wasn't going to fight on [his] behalf." He explained that Ms. Loehrs' report and testimony would have been beneficial to his defense if he had proceeded to trial and that he would not have entered a best interest plea if Ms. Loehrs had been subpoenaed to testify.

On cross-examination, the Petitioner agreed that he had entered a negotiated best interest plea and that if he had proceeded to trial, he would have faced a possible sentence of over seventy-two years. The Petitioner also agreed that prior to trial, trial counsel had informed him that the State's expert had reviewed Ms. Loehrs' report and the State's expert had also prepared a report to rebut Ms. Loehrs' conclusions. He agreed that it was his responsibility to pay Ms. Loehrs' travel and testimony expenses. On redirect-examination, the Petitioner stated that he did not pay Ms. Loehrs' travel and testimony expenses in advance because he was waiting on her invoice. The Petitioner explained that he did not have the legal training to subpoena Ms. Loehrs to testify and that he had hired trial counsel to handle that aspect of the case.

Trial counsel testified that he was retained to represent the Petitioner on the criminal charges. When asked if he recalled advising the Petitioner that his only options were to plead guilty, flee to Mexico, or hire a new attorney, trial counsel responded that he did not recall, but the statement sounded like something he would have said. Trial counsel explained that the Petitioner also had the option of proceeding to trial but he stated that the Petitioner did not have a defense. Trial counsel stated that Ms. Loehrs had traveled to Tennessee and "looked at the computer software and made a report." Trial counsel shared that report with the State according to his obligation under the Tennessee Rules of Criminal Procedure. Trial counsel stated that the State shared Ms. Loehrs' report with its expert, who then examined "the computer a lot more thoroughly than he had done the first time." Consequently, the Petitioner's case was continued for several months while the State's expert examined the evidence. Trial counsel stated that the State's expert then "issued a report, which . . . seemed to be a much more thorough and accurate assessment of what was in the computers as opposed to Ms. Loehrs' evaluation." Trial counsel explained that the report prepared by the State's expert "pointed out a lot of

- 4 -

things that Ms. Loehrs . . . didn't look at, and [that Ms. Loehrs] made some assumptions that were incorrect[] and used . . . some kind of software to examine the hardware that was out-of-date or not the correct software to use."

Trial counsel explained that after Ms. Loehrs received a copy of the State's report, she traveled to Tennessee a second time. Trial counsel stated that Ms. Loehrs informed him of the following during a telephone conversation:

> [A]fter [she] evaluated the computer software, after the State gave the very exhaustive report that they gave, she could not contend and she could not argue against the State's report, and essentially told [trial counsel] that the State's report was correct; that there was child pornography on the computers, and [the Petitioner] was the one who had access to it and [the Petitioner] was the one that was looking at it.

Trial counsel asked Ms. Loehrs to put her findings from her second examination into a report because the Petitioner had disagreed with her conclusions and asserted that several of the counts in the indictment were based on time periods "where [the Petitioner] would not have had access to these computers when these images were allegedly downloaded." Trial counsel explained that he did not subpoena Ms. Loehrs to testify at the Petitioner's trial because she had informed him that she could not argue against the State's report. When asked when he notified the Petitioner that his expert had not been subpoenaed or indicated as a witness on the witness list, trial counsel stated "[p]robably right after [Ms. Loehrs] told [him] on the phone that she could not dispute the State's follow-up report."

Trial counsel stated that he did not recall that Ms. Loehrs had informed him that "she could still identify four or five images that [the Petitioner] would not have had the ability to download because he was somewhere where he would not have been able to do that[.]" Trial counsel also did not recall whether on the morning of the scheduled trial date, the Petitioner gave him two letters to deliver to the trial court. However, trial counsel stated that he was sure that he discussed the letters with the State in the trial court's chambers. Trial counsel testified that he could not recall specifically what was discussed in the trial court's chambers that morning but he stated that the trial court was not "about to give anybody a continuance on the day of trial[,]" regardless of the reason. Trial counsel testified that he never filed a motion to withdraw. He agreed that he was concerned about representing the Petitioner at a jury trial because the Petitioner did not have a defense. Trial counsel could not recall specifically what he discussed with the Petitioner before the plea submission hearing but stated that the Petitioner "wasn't happy with what he was hearing[.]"

On cross-examination, trial counsel testified that on the morning of the trial date, he knew that the Petitioner wanted to terminate the representation, but he could not confirm whether the Petitioner gave him two letters to deliver to the trial court. Trial counsel stated that even if the Petitioner had given him two letters to deliver to the trial court, he was unsure that the trial court "would have taken a letter from [him] written from [his] client." However, trial counsel stated that he believed that he informed the trial court during the meeting in chambers that the Petitioner wanted to terminate the representation. Trial counsel agreed that the Petitioner's trial was continued on at least one occasion to allow the Petitioner to leave the Army before entering a plea. Trial counsel also agreed that after reading the experts' reports, the Petitioner's best strategy was to negotiate a plea offer with the State; however, trial counsel stated that he was prepared to proceed to trial if the Petitioner had declined to enter a best interest plea.

Trial counsel agreed that even though the Petitioner had indicated that he wanted to terminate trial counsel's representation, trial counsel continued to represent the Petitioner until he was sentenced in January 2015. Trial counsel stated that the Petitioner did not ask to terminate the representation after he entered his best interest plea. On redirect-examination, trial counsel stated that the Petitioner "was very consistent all along that he didn't do anything." He stated that the Petitioner had "receipts" that allegedly showed that he was "at locations where he couldn't have retrieved or downloaded some of the[] pictures or images that were allegedly downloaded." Trial counsel gave the following explanation concerning the importance of the Petitioner's "receipts":

> When child pornography was being downloaded on the computer, apparently somebody was on the computer entering [the Petitioner's] passwords to check his account at Fort Campbell Federal Credit Union and checking other accounts that were in his name only, which presumably is what led the State's expert to believe that it was [the Petitioner] who was downloading the child pornography and then checking bank accounts and other things while it was occurring.

Trial counsel agreed that the Petitioner had an eighteen-year-old stepson who was also living in the house at the time the offenses were committed.

On recross-examination, trial counsel agreed that two computers and one external hard drive were involved in the commission of the offenses and that Ms. Loehrs did not examine one of the items. Trial counsel was asked about the Petitioner's assertion "that he was on vacation somewhere when some of the downloads were done[.]" Trial counsel stated that "the State's expert actually reviewed where the login entries were, to show [where the Petitioner] was at the time that he said he was gone." Trial counsel agreed that the State's expert's conclusion that the Petitioner had downloaded the images of

child pornography was based on the fact that some of the images were downloaded on the computer while the Petitioner was overseas and had taken the computer with him and on the fact that the expert could prove that the Petitioner had custody of the computer at the Atlanta airport at the time some images had been downloaded. Trial counsel agreed that it was his opinion that it was in the Petitioner's best interest to enter a negotiated plea. Trial counsel noted that the State had initially offered a plea offer of an eleven-year sentence but that the Petitioner entered a best interest plea to an eight-year sentence.

After trial counsel's testimony ended, post-conviction counsel noted that the Petitioner had filed a motion "to have [his] expert either appear or participate telephonically." Concerning the reports of the two experts, post-conviction counsel stated: "We would stipulate that the reports [were] prepared, that we're going [to] pass up, were from our experts. So the Court could take that under advisement and review it." Post-conviction counsel continued: "So I spoke with [the assistant district attorney general] and [the Petitioner]; my client doesn't have an issue with just presenting the expert reports of each respective expert and letting the Court take that under advisement to review it, Your Honor." The trial court then asked the State if it was willing to stipulate to the introduction of the reports. The following exchange then took place:

> GENERAL BROLLIER: Your Honor, my position is that he's not put on any proof today that would make that necessary. He's not shown a likelihood of success at trial, which he has to do. We can certainly introduce these. You know, I, basically, thought the last -- the Court's last ruling was we were going to do a bifurcated type hearing. The Court will make a ruling at this point based on the testimony whether or not there's any need for those expert opinion reports. I'd submit that the proof, to this point, is that there is not.

> THE COURT: So my question was: You're not – y'all are not willing to stipulate as to the introduction of the reports; is that right?

> GENERAL BROLLIER: No, sir, I don't mean that. I'm just trying to keep it in order. I -- if – I mean –

> THE COURT: Well, I am too.

> GENERAL BROLLIER: -- if the Court rules that you'd want to hear those, that you –

> THE COURT: Pardon?

GENERAL BROLLIER: If you feel like that [the Petitioner] has reached that basic threshold, the State would stipulate rather than paying the cost of bringing Ms. Loehrs here, the State will stipulate and we can introduce the expert opinion reports to the Court. They are, frankly, rather lengthy and difficult to understand, but we can certainly do that.

THE COURT: I'm just having a little difficult time understanding what it is your position is. If I understand correctly, what you're saying, you want me to determine first if there's a necessity to hear from the experts, correct?

GENERAL BROLLIER: Yes, sir. And that's because –

THE COURT: All right.

GENERAL BROLLIER: -- under the standard for this PCR with a guilty plea -- here, when we have a guilty plea; the burden is on the [Petitioner], and it is a very high burden. I would submit that given [trial counsel's] testimony and [the Petitioner's] testimony there is absolutely no evidence before this Court that his plea was anything other than voluntary and willing. As willing as any defendant is when they pled guilty. No Defendant is just going to jump up and down and say yay, I want to ple[a]d guilty. They plead guilty under the coercion of a trial sitting right there in front them. The Petitioner is no different than any other defendant in that sense.

Post-conviction counsel responded:

Obviously, as another prong of this is a knowing and voluntary plea, I mean, obviously, our argument would be clearly the witness who [the Petitioner] had paid $20,000 to was not subpoenaed by his trial attorney to come to court to testify on his behalf. That's where I think the nature of what the report says is important. If [the Petitioner] had the right to have his expert here. He didn't have to prove anything at that point in time; he just had to create some type of reasonable doubt. We believe that the fact that his expert wasn't subpoenaed created no choice whatsoever except for [the Petitioner] to plead guilty. He didn't have a lawyer who was willing to represent him; he was told here are your three options, none were to go to trial; one of them was to flee -- flee to Mexico, which [trial counsel] said that sounds like something I would say. So we believe to show the whole argument under *Strickland* we have to let the Court review the reports to

- 8 -

determine if that would be outcome determinative to any kind of deficient performance of counsel.

At the conclusion of the post-conviction hearing, the post-conviction court stated that it would "take the matter under advisement and give an opinion[.]" The post-conviction court also stated that depending on what findings it made under *Strickland v. Washington*, 466 U.S. 668 (1984), it would "then determine whether [the post-conviction court and parties] need[ed] to pursue the issue with the experts."

On March 24, 2016, the post-conviction court entered an order denying post-conviction relief. The court stated:

> The expert of the Petitioner resided in Arizona, and counsel for the Petitioner did not advance or request of [the Petitioner] that he front or pre-pay the expense of transportation and testimony time for his expert, in consideration of the fact that Petitioner's expert would be of little benefit.

> On the day of trial, August 18, 2014, Petitioner agreed to enter a Best Interest plea, at which time the trial [j]udge specifically inquired, "Do you understand by entering this no contest plea, that you are forever giving up your right to have that jury trial?" The response of the Petitioner was, "Yes sir." The trial [j]udge continued with further questioning and very thoroughly covered with the Petitioner the Petitioner's right, and the fact that a conviction would be entered.

The post-conviction court concluded that "[i]n reviewing the transcript of the plea [submission hearing] . . . , this court considered the factors enumerated in *Blankenship* and finds that the [Petitioner] entered the [b]est [i]nterest plea voluntarily, understandingly, and knowingly." The Petitioner timely appealed the post-conviction court's denial of relief.

The Petitioner appealed claiming that the post-conviction court erred in denying post-conviction relief. The State argued that the petition was properly dismissed.

## II. Analysis

### Standard of Review

In order to prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and

fact. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). Appellate courts are bound by the post-conviction court's factual findings unless the evidence preponderates against such findings. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015). When reviewing the post-conviction court's factual findings, this court does not reweigh the evidence or substitute its own inferences for those drawn by the post-conviction court. *Id.*; *Fields*, 40 S.W.3d at 456 (citing *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the [post-conviction court]." *Fields*, 40 S.W.3d at 456 (citing *Henley*, 960 S.W.2d at 579); *see also Kendrick*, 454 S.W.3d at 457. The post-conviction court's conclusions of law and application of the law to factual findings are reviewed *de novo* with no presumption of correctness. *Kendrick*, 454 S.W.3d at 457.

*Ineffective Assistance of Counsel*

On appeal, the Petitioner alleges that trial counsel's performance was deficient in failing to subpoena Ms. Loehrs to testify at trial and in failing to inform the Petitioner that Ms. Loehrs would not be testifying at his trial. The Petitioner claims he learned that Ms. Loehrs was not subpoenaed on Friday afternoon, three days before the Petitioner's trial was scheduled to begin. The Petitioner asserts that he was prejudiced by trial counsel's deficient performance because he would have proceeded to trial if Ms. Loehrs had been subpoenaed to testify at his trial.

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to receive post-conviction relief for ineffective assistance of counsel, a petitioner must prove: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (stating that the same standard for ineffective assistance of counsel applies in both federal and Tennessee cases). Both factors must be proven in order for the court to grant post-conviction relief. *Strickland*, 466 U.S. at 687; *Henley*, 960 S.W.2d at 580; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Accordingly, if we determine that either factor is not satisfied, there is no need to consider the other factor. *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007) (citing *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004)). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Henley*, 960 S.W.2d at 579. We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. *Granderson v. State*, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

As to the first prong of the *Strickland* analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases." *Henley*, 960 S.W.2d at 579 (citing *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)); *see also Goad*, 938 S.W.2d at 369. In order to prove that counsel was deficient, the petitioner must demonstrate "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688); *see also Baxter*, 523 S.W.2d at 936.

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. *Goad*, 938 S.W.2d at 370. Therefore, under the second prong of the *Strickland* analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted).

A substantially similar two-prong standard applies when the petitioner challenges counsel's performance in the context of a guilty plea. *Hill v. Lockhart*, 474 U.S.52, 58 (1985); *Don Allen Rodgers v. State*, No. W2011-00632-CCA-R3-PC, 2012 WL 1478764, at *4 (Tenn. Ct. Crim. App. April 26, 2012). First, the petitioner must show that his counsel's performance fell below the objective standards of reasonableness and professional norms. *See Hill*, 474 U.S. at 58. Second, "in order to satisfy the 'prejudice' requirement, the [petitioner] must show that there is a reasonable probability that, but for counsel's errors, he would have not have pleaded guilty and would have insisted on going to trial." *Id.* at 59.

In cases where a petitioner contends that trial counsel failed to present a witness in support of the petitioner's defense, the petitioner must present such witness at the post-conviction hearing. *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Neither a trial nor an appellate judge can speculate as to whether that witness's testimony would have been favorable to the defense. *Id.* Therefore, the petitioner must "produce a material witness who . . . would have testified favorably in support of his defense if called [at trial]. Otherwise, the petitioner fails to establish the prejudice requirement mandated by *Strickland v. Washington*." *Id.* at 758.

One of the issues raised in the petition for post-conviction relief was whether the Petitioner's plea was involuntarily entered as a result of deficient representation by trial counsel. Petitioner testified that he retained counsel to represent him and that he paid Ms. Loehrs, a computer forensics expert, $20,000 for her services, which would

presumably include her testimony at trial. According to the Petitioner, the Friday before his Monday trial was scheduled to begin, he had a pretrial meeting with trial counsel and left the meeting under the impression that Ms. Loehrs would be at trial to testify. The Petitioner telephoned Ms. Loehrs Friday afternoon "to see how much money she need[ed] as far as flying back here to testify." Ms. Loehrs informed the Petitioner that she would not be at the trial because she was not on the witness list and had not been subpoenaed by trial counsel. After learning that Ms. Loehrs would not be testifying, the Petitioner contacted trial counsel and was told that he did not have a defense and that he had three options: "take a plea deal;" "flee to Mexico;" or "hire a new attorney." After speaking with trial counsel, the Petitioner drafted a letter to trial counsel terminating his representation and a letter informing the court that he had terminated trial counsel's representation and requesting a continuance. The Petitioner also spoke with other attorneys about hiring new trial counsel, but he was unable to retain a new attorney. On Monday morning he unsuccessfully tried to submit the letters to the trial judge. According to Petitioner, he then gave them to trial counsel in an effort to have trial counsel submit them to the trial judge. After trial counsel met with the Assistant District Attorney and the trial judge, he advised the Petitioner that the court denied a continuance and that he either had to plead guilty or have a trial. The trial court did not credit or discredit the Petitioner's testimony.

When asked if he recalled advising the Petitioner that his only options were to plead guilty, flee to Mexico, or hire a new attorney; trial counsel responded that he did not recall, but the statement sounded like something he would have said. When asked when he notified the Petitioner "that his expert had not been subpoenaed or indicated as a witness on the witness list[,] trial counsel stated "[p]robably right after [Ms. Loehrs] told [him] on the phone that she could not dispute the State's follow-up report." Trial counsel also did not recall whether on the morning on the trial, the Petitioner gave him two letters to deliver to the trial court. However, trial counsel stated that he was sure that he discussed the letters with the State in the trial court's chambers. Trial counsel testified that he could not recall specifically what was discussed in the trial court's chambers that morning but he stated that the trial court was not "about to give anybody a continuance on the day of trial[,]" regardless of the reason. He agreed that he was concerned about representing the Petitioner at a jury trial because the Petitioner did not have a defense. The trial court did not credit or discredit the trial counsel's testimony.

Tennessee Code Annotated section 40-30-111(b), which governs final disposition of post-conviction petitions, provides:

(b) Upon the final disposition of every petition, the court shall enter a final order, and except where proceedings for delayed appeal are allowed, shall set forth in the order or a written memorandum of the case all grounds

- 12 -

presented, and shall state the findings of fact and conclusions of law with regard to each ground.

Tenn. Code Ann. § 40-30-111(b). Rule 28 of the Rules of the Tennessee Supreme Court "supplement[s] the remedies and procedures set forth in the Post-Conviction Procedure Act[.]" Tenn. Sup. Ct. R. 28 § 1(A). Rule 28 § 9(A) provides in pertinent part, "The court shall enter an order granting or denying the petition within sixty (60) days of the conclusion of the proof. The order shall contain specific findings of fact and conclusions of law relating to each issue presented." Tenn. Sup. Ct. R. 28 § 9(A)

Here, the post-conviction court failed to enter a final order or memorandum that contained "specific findings of fact and conclusions of law relating to each issue presented." The final order did not comply with Tennessee Code Annotated section 40-30-111(b) or Rule 28 § 9(A). Further, the post-conviction court did not orally pronounce any findings of fact or legal conclusions at the post-conviction evidentiary hearing. Therefore, we remand this case for a new post-conviction hearing. *See Isaac Earl Edgin v. State*, No. M1999-01620-CCA-R3-PC, 2001 WL 120578, at * 3 (Tenn. Crim. App. Feb. 1, 2001), *no perm. app. filed*. Because there was minimal evidence in the record regarding the substance of the reports of the State's expert and Ms. Loehrs, we would encourage the parties to stipulate to the admission of the reports in the interests of judicial efficiency or for the trial court to accommodate her testimony telephonically.

### III. Conclusion

For the aforementioned reasons, the judgment of the post-conviction court is reversed and remanded for a new post-conviction hearing.

_____
ROBERT L. HOLLOWAY, JR., JUDGE